UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**KEVIN J. LANGENHUIZEN,**

   **Plaintiff,**

   v.                                                            Case No. 20-CV-250

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

   **Defendant.**

## DECISION AND ORDER

Kevin J. Langenhuizen seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On April 26, 2016, Langenhuizen protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning March 31, 2014 (Tr. 16) due to a shattered heel and a heart condition (Tr. 356). Langenhuizen's applications were denied initially and upon reconsideration. (Tr. 16.) Langenhuizen filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on June 27, 2018. (Tr. 34–79.) Langenhuizen testified at the hearing, as did Leslie Goldsmith, a vocational expert. (Tr. 34.)

In a written decision issued October 31, 2018, the ALJ found that Langenhuizen had the severe impairments of coronary atherosclerosis, status-post cardiac bypass surgery with aortic and mitral valve replacement; history of left foot fracture, status-post surgical open reduction internal fixation ("ORIF"); and obesity. (Tr. 19.) The ALJ found that Langenhuizen did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (*Id.*) The ALJ further found that Langenhuizen had the residual functional capacity ("RFC") to perform medium work, with the following limitations: he can only operate foot controls with the left lower extremity on an occasional basis; he can only climb ramps and stairs occasionally; he can never climb ladders, ropes or scaffolds; and he can never work at unprotected heights or around moving mechanical parts. (*Id.*)

Although Langenhuizen was unable to perform his past relevant work as a laborer/construction worker (Tr. 24), the ALJ found that given Langenhuizen's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 24–26.) As such, the ALJ found that Langenhuizen was not disabled from March 31, 2014 through the date of the decision. (Tr. 26.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Langenhuizen's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not

conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

    2.    *Application to This Case*

        2.1    Medical Background

            2.1.1    Left Foot Injury

On March 31, 2014, his alleged onset date, Langenhuizen fell approximately five feet from scaffolding at work, landing on a plank on the ground. (Tr. 456.) He suffered a comminuted[1] left calcaneus[2] fracture of his left foot. (Tr. 457.) Langenhuizen underwent ORIF surgery in April 2014, with orthopedic plates and screws placed in his left heel. (Tr.

---

[1] "Comminuted" indicates that the bone was broken into several pieces. Stedman's Medical Dictionary, Comminuted (27th ed. 2000).
[2] The largest of the tarsal bones; it forms the heel and articulates with the cuboid anteriorly and the talus superiorly. Stedman's, Calcaneus.

574.) Langenhuizen attended physical therapy from July 2014 until September 2014, when he had ORIF wound debridement surgery to address his non-healing wound from the April surgery. (Tr. 476–91.) Langenhuizen continued with physical therapy from October 2014 through early January 2015. (Tr. 491–558.) At the conclusion of his physical therapy, Langenhuizen treated with the podiatrist who performed his surgeries, Dr. Todd Derksen. (Tr. 563.) In December 2014, Dr. Derksen noted that Langenhuizen continued to have a considerable amount of postoperative edema, fifty percent decreased subtalar joint range of motion, mild decreased midtarsal motion, and tenderness with palpation and manipulation of the joint. (*Id.*) Dr. Derksen stated that Langenhuizen would continue to have ankylosing of the joint which would "likely give him a low disability rating"; however, he found that Langenhuizen "made enough progress that we can get him back to more normal duty at this point." (*Id.*) Dr. Derksen cleared Langenhuizen to return to work, but limited him to a 15-20 minute sit-down break every two hours. (*Id.*)

In January 2015, Langenhuizen followed-up with Dr. Derksen. (Tr. 562.) At this point, Dr. Derksen found that after physical therapy, Langenhuizen had reached his maximum medical improvement and assigned him a permanent partial disability rating of 25%—15% representing the ankylosing of the subtalar joint and 10% for the moderate pain that limits his daily activities and work. (*Id.*) Dr. Derksen stated that Langenhuizen "will have permanent work restrictions of must be allowed to sit every two hours." (*Id.*) Dr. Derksen stated that Langenhuizen should follow-up as needed, and noted that he may eventually need a subtalar fusion surgery. (*Id.*)

In February 2015, Langenhuizen began working with the Wisconsin Division of Vocational Rehabilitation ("DVR"). (Tr. 600.) The DVR assessed Langenhuizen with serious

4

limitations in mobility (Tr. 601) and noted in September 2015 that he would need a job "that is sedentary in nature" (Tr. 605). Langenhuizen reported that the longest he could stand was for one and a half hours, before needing to sit and elevate his left foot due to pain. (Tr. 606.)

On June 4, 2015, State Agency physician Dr. Pat Chan assessed Langenhuizen's functioning at the initial level. (Tr. 89.) Dr. Chan noted that Dr. Derksen restricted Langenhuizen to sitting every two hours due to swelling and decreased range of motion in the left ankle. Dr. Chan gave Dr. Derksen's statements "great weight considering the medical findings support statements," and noted that "break restrictions are permitted w/two 15 min breaks and one 30 min lunch break w/n a 8 hour workday." (Tr. 88–89.) Dr. Chan opined Langenhuizen should be limited to light work. (Tr. 87.) On reconsideration, State Agency physician Dr. George Walcott agreed with Dr. Chan's assessment. (Tr. 122–23.)

After not treating with Dr. Derksen for approximately a year and a half, Langenhuizen returned in August 2016, complaining of throbbing heel pain on a daily basis, worse with weightbearing, and pain extending out to the ball of his foot. (Tr. 946.) Langenhuizen described the pain as feeling "like he is walking on a stone," and stated that the pain began during physical therapy but had slowly gotten progressively worse. (*Id.*) Langenhuizen stated that the more active he gets, the sharper the pain. (*Id.*) Upon physical examination, Dr. Derksen noted mild edema throughout the rear foot, mild decreased ankle range of motion, and moderately decreased subtalar joint range of motion, about 50% of normal. (*Id.*) Dr. Derksen found that Langenhuizen could likely improve the metatarsalgia non-operatively, but would more than likely require eventual surgery to address the subtalar joint pain. (*Id.*) Dr. Derksen recommended cortisone injections, prescribed Meloxicam, and gave him Powerstep arch supports with metatarsal pads. (Tr. 946–47.) A few weeks later, during a

comprehensive physical exam, Langenhuizen reported left heel pain to his treating provider, who noted that he "[f]avors left foot some with initial steps after sitting for awhile." (Tr. 952.)

In November 2016, Dr. Chan again reviewed Langenhuizen's file at the initial level. (Tr. 131–35.) This time, Dr. Chan limited Langenhuizen to medium work (Tr. 131) and gave Dr. Derksen's permanent work restrictions "little weight," stating that needing a rest period to sit down at least every two hours was "open for interpretation." (Tr. 133.) At the reconsideration level in January 2017, State Agency physician Dr. William Fowler agreed with Dr. Chan's subsequent assessment of medium work. (Tr. 171.)

In late December 2016, Langenhuizen sought a second opinion on his foot with Dr. Richard Hammond. (Tr. 1000.) Langenhuizen reported pain, primarily in the plantar aspect of his left forefoot underneath the fifth metatarsal, stating that it felt like "he is walking on a stone." (*Id.*) Langenhuizen stated that the over-the-counter inserts given to him by Dr. Derksen did not help his foot and he was also experiencing joint stiffness and numbness. (*Id.*) Upon physical examination, Dr. Hammond noted full range of motion of the bilateral ankle joints without pain; but limited range of motion in eversion, supination, and pronation motions of the subtalar joint on the left without pain. (Tr. 1001.) He found moderate pain to palpation on the plantar aspect of the 5th metatarsal head on the left and a pes planus foot type (i.e., flat foot) when ambulating. (*Id.*) Langenhuizen was fitted for orthotics and felt some immediate relief from the pain and discomfort. (Tr. 1015.)

In March 2018, Langenhuizen treated with his primary care provider, who noted that Langenhuizen was not engaging in regular exercise due to ongoing problems with his left heel. Langenhuizen stated that he planned on rechecking his ankle with Dr. Derksen. (Tr. 1031.) It was recommended that Langenhuizen use a stationary bike for exercise because his

ankle issues made it difficult for him to walk. (Tr. 1035.) In June 2018, Langenhuizen was treated in the emergency room after he sprained his ankle while mowing the lawn, causing increased pain and swelling. (Tr. 1072.) At the administrative hearing, Langenhuizen testified that his ankle continued to swell and that motion was difficult. (Tr. 49–50.) He stated that if he performs an activity on his feet like mowing the lawn, after approximately one and a half hours, he needs to sit and elevate his ankle. (Tr. 61–62.)

### 2.1.2 Cardiac Impairment

During a pre-operative assessment prior to foot surgery in April 2014, Langenhuizen treated with Dr. Thomas Lewandowski, who noted that while Langenhuizen suffered from coronary artery disease, he was otherwise asymptomatic with moderate activity. (Tr. 471–74.) In October 2015, Langenhuizen underwent a cardiac catheterization after having an abnormal nuclear stress test and increased symptoms of angina. (Tr. 627, 630.) The catheterization showed severe coronary artery disease and chronic total occlusion in the mid-right coronary artery. (Tr. 637.) On May 3, 2016, Langenhuizen underwent a triple coronary artery bypass grafting surgery and mitral and aortic valve replacement. (Tr. 646.) Langenhuizen participated in cardiac rehabilitation through July 2016. (Tr. 869–922.) While doing cardiac rehabilitation, the therapist noted that Langenhuizen was planning on having his heel looked at again when he was done with rehab and that his left heel limits his workloads. (Tr. 869, 873, 876, 882, 888, 891, 894, 897, 900, 903.) Langenhuizen testified that he has had few problems with his heart since the surgery, except some occasional shortness of breath when mowing the grass or shoveling snow. (Tr. 54–55.)

### 2.2 Light vs. Medium Work

The crux of Langenhuizen's argument is that the ALJ erred in limiting him to medium level work. In so doing, the ALJ rejected Dr. Derksen's permanent work restrictions and the State Agency physicians' previous limitation to light work based on those restrictions, instead adopting the State Agency physicians' subsequent opinions limiting him to medium work. The ALJ justifies rejecting the State Agency physicians' previous opinions on the subsequent evidence of record allegedly showing that Langenhuizen had attained greater exertional capacity. (Tr. 23–24.) Specifically, the ALJ relies on Dr. Hammond's physical examination showing less pain and greater range of motion, as well as the records allegedly showing that subsequent to his ORIF surgery, Langenhuizen "was able to recover functionality through a course of treatment that included PT, medications, and the use of orthotics." (Tr. 22.)

The shift from light to medium work is significant. At the time Dr. Chan and Dr. Walcott first assessed Langenhuizen's limitations (on June 4 and August 24, 2015, respectively), Langenhuizen was 53 years old (DOB August 30, 1961), or a "person closely approaching advanced age," under the regulations. 20 C.F.R. § 404.1563(d). When Dr. Chan and Dr. Fowler assessed Langenhuizen again in November 2016 and January 2017, he was 55 years old, or a "person of advanced age." 20 C.F.R. § 404.1563(e). This change is significant given Langenhuizen's classification under the "grids." The grids are a series of tables broken into separate rules "'which classif[y] a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience.'" *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional

capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.").

Under grid rule § 202.14, an individual of closely approaching advanced age, with a high school education, and a lack of transferability of skills, is not disabled when limited to light work. However, under grid rule § 202.06, this same individual, but now of advanced age, *is* disabled under the grid. In contrast, the same individual, limited to medium work, is not disabled whether of advanced or closely approaching advanced age. *See* grid rules §§ 203.15, 203.22.

In Langenhuizen's case, the change from light to medium work says little about his actual functional limitations. This is because the main difference between light and medium work is the amount of weight that a person can lift. When it comes to walking, standing, and sitting, whether under light or medium work, a person must be able to do "a good deal of walking or standing," specifically standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday with sitting occurring intermittently during the remaining time. Social Security Ruling ("SSR") 83-10. The record does not indicate that Langenhuizen has any upper extremity limitations. In fact, in assessing Langenhuizen capable of performing light work in June 2015, Dr. Chan specifically noted that Langenhuizen had no upper extremity limitations, but was limited to light work due to Dr. Derksen's permanent work restrictions of sitting every two hours for 15-20 minutes. (Tr. 87, 99.) Thus, perhaps if not for the grid consideration, the change would not be error.

But given Langenhuizen's change in age category, the shift from light to medium work is indeed significant. And neither the State Agency physicians' explanations, nor the ALJ's rationale for adopting the change to medium work, comports with the record. It is entirely

9

unclear why Dr. Chan would give great weight to Dr. Derksen's permanent work restrictions, finding they were supported by the record, and two years later give the same restrictions little weight because the restriction is now "open for interpretation." (Tr. 133.) And the ALJ overstates Langenhuizen's level of improvement. Langenhuizen did not completely "recover functionality" through PT, medications, and orthotics as the ALJ asserts (Tr. 22); rather, these methods allowed Langenhuizen to reach a healing plateau requiring the need to sit every two hours for approximately 15-20 minutes. It is clear from the record that subsequent to completing physical therapy in early 2015, Langenhuizen continued to experience heel pain while standing and walking. Although he did not treat for the remainder of the relevant time period (besides seeking a second opinion in December 2016), this is not surprising, given that the physical therapist and podiatrist found that Langenhuizen had reached a healing plateau. The record does not support the ALJ's rejection of Dr. Derksen's permanent work restrictions or support the State Agency physicians' changed assessment from light to medium level work.

Again, given the standing, walking, and sitting requirements are the same for light or medium level work and assuming Langenhuizen does not "grid out," the Commissioner argues that the VE in this case *did* identify jobs that Langenhuizen could perform that although classified as medium, allow a person to sit for at least two hours. (Commissioner's Br. at 21, Docket # 17.) The key distinction, however, is that medium and light work, by definition, require at least 6 hours of standing and/or walking with "sitting intermittently during the remaining time." SSR 83-10. SSR 83-10 states that for medium work, "being on one's feet for most of the workday is critical." Thus, this type of work permits *intermittent* sitting. The record, however, supports that after being on his feet for one and a half to two hours, Langenhuizen needs a sustained period of continuous sitting (as Dr. Derksen found,

10

15-20 minutes), before returning to his feet. At the hearing, Langenhuizen's counsel specifically asked whether work was available for an individual, limited to medium work, who "would need to sit every two hours for 15 to 20 minutes." (Tr. 73.) The VE clarified "Continuously, like take away from standing and sit for 15 or 20 minutes?," to which counsel responded affirmatively. (Tr. 74.) The VE then testified under those circumstances, "that would probable preclude these jobs." (*Id.*) For these reasons, the ALJ must re-examine on remand whether the record supports Langenhuizen's ability to stand and/or walk for six out of eight hours, consistent with medium and/or light level work, given his permanent work restrictions.

### 2.3 Cardiac Condition

Although this case is being remanded on other grounds, I will briefly address Langenhuizen's argument that the ALJ erred by failing to adopt limitations specific to his heart condition. Langenhuizen argues that the ALJ failed to include any limitations for his cardiac condition, despite finding the condition to be a severe impairment. He argues that a severe impairment, "[b]y definition . . . means the condition significantly limits Langenhuizen's ability to do basic work activities." (Pl.'s Br. at 21, Docket # 13.) I do not agree that the ALJ erred as to Langenhuizen's cardiac condition. Langenhuizen acknowledged that his bypass surgery was successful and testified that he has had few problems with his heart since the surgery, except some occasional shortness of breath when mowing the grass or shoveling snow. (Tr. 54–55.) Thus, it is unclear what limitations he believes the ALJ should have included based on his cardiac impairment. A finding that a claimant's impairment is "severe" does not necessarily mean that the impairment will affect the RFC. *See, e.g.*, *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D.

Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018) ("The ALJ must clearly consider the severe impairments in determining the claimant's RFC, not necessarily assess limitations for each severe impairment."); *Sarah B. v. Berryhill*, No. 1:17-CV-0080-BL, 2018 WL 3763837, at *8 (N.D. Tex. June 29, 2018), *report and recommendation adopted*, No. 1:17-CV-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018) ("[T]hat Step 2 only requires 'a *de minimis* showing' provides an apt reminder that courts must vigilantly keep in mind the differences between an assessment of RFC and a Step 2 severity finding.") (internal citation omitted); *Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015) ("[A] finding that a claimant has a severe impairment at step two does not necessarily require a corresponding restriction in the RFC."); *Carrier v. Astrue*, No. CIV. SAG-10-3264, 2013 WL 136423, at *1 (D. Md. Jan. 9, 2013) ("One of her arguments is the ALJ's RFC was inconsistent with his Step Two findings of bilateral severe hand impairments. That argument is deficient, because there is no requirement that every severe impairment correlate with a particular restriction in the RFC."). Thus, I do not find the ALJ erred in this regard.

## CONCLUSION

I find that the ALJ erred in his assessment of Langenhuizen's RFC as to his left foot impairment and in the corresponding hypothetical to the VE. Because the ALJ's decision is not supported by substantial evidence, this case is remanded pursuant to 42 U.S.C. § 405(g), sentence four for reconsideration consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge